UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ARTHUR LEE BROTHERS,

    Petitioner,

v.　　　　　　　　　　　　　　　　　　　　　CASE NO. 6:06-cv-583-Orl-18JGG

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

    Respondents.

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 15). Petitioner filed a reply to the response (Doc. No. 21).

Petitioner alleges four claims for relief in his habeas petition: (1) trial counsel rendered ineffective assistance by failing to attempt to locate a witness; (2) trial counsel rendered ineffective assistance by failing to file a motion to suppress the show-up identification; (3) trial counsel rendered ineffective assistance by failing to hire an expert witness to challenge the State's evidence regarding the shoe print found at the scene of the

crime; and (4) the trial court erred in finding that the charge of felony fleeing and eluding did not violate the Double Jeopardy Clause of the United States Constitution.

I. *Procedural History*

Petitioner was convicted by a jury of burglary of an occupied structure (count one), grand theft of a motor vehicle (count two), grand theft (count three), fleeing or attempting to elude at high speed or with wanton disregard (count four), and misdemeanor resisting an officer without violence (count five).[1] The trial court sentenced Petitioner to a ten-year term of imprisonment for count one and a five-year term of imprisonment for counts two, three, and four, to be served consecutively for a total term of imprisonment of fifteen years. Petitioner appealed, and on August 19, 2003, the Florida Fifth District Court of Appeal affirmed *per curiam*.

Petitioner filed a Florida Rule of Criminal Procedure 3.850 motion for post-conviction relief. The state trial court denied the motion, and the appellate court affirmed *per curiam* on October 11, 2005.

II. *Legal Standards*

    A. *Standard of Review Under the AEDPA*

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

---

[1] Prior to trial, in another state court, Petitioner entered a plea of no contest to misdemeanor fleeing or attempting to elude.

2

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005), *cert. denied*, 127 S. Ct. 348 (2006). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of

3

the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B. Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2] *Id.* at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir.), *cert. denied*, 493 U.S. 945 (1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether

---

[2] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

> some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted), *cert. denied*, 514 U.S. 1131 (1995). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### IV. Analysis

#### A. Claim One

Petitioner asserts that trial counsel rendered ineffective assistance by failing to attempt to locate, depose, and subpoena a witness for trial. Petitioner maintains that he told counsel prior to trial that on the evening of February 26, 2002, he was gambling at a private residence known as the "Skin House" where he met an individual known as "Tommy." Petitioner asserts that Tommy had a truck loaded with construction equipment, and he offered to split the proceeds from the sale of the equipment with Petitioner if he could sell it. Petitioner contends that he took the truck to sell the equipment and was subsequently arrested driving the truck. Petitioner maintains that he asked trial counsel to send an investigator to the Skin House to attempt to locate Tommy. Petitioner asserts that Tommy would have corroborated his trial testimony that he did not commit the burglary, but instead got the truck and equipment from Tommy.

5

Petitioner raised this claim in his Rule 3.850 motion, and the state trial court denied it. (App. G at 3-4.) Applying *Strickland*, the state court determined that no reasonable probability existed that the jury would have acquitted Petitioner if Tommy had testified because the testimony was suspicious and would not have served to exonerate him from the offenses with which he was charged. *Id.*

"'[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.'" *Daniels v. McDonough*, 2006 WL 2620143, at *10 (M.D. Fla. 2006) (quoting *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted)). As such, "to successfully assert that trial counsel should have called a witness, a petitioner must first make a sufficient factual showing substantiating the proposed witness testimony." *Daniels*, 2006 WL 2620143, at *10 (citing *United States v. Schaflander*, 743 F.2d 714, 721 (9th Cir. 1984)). Evidence sufficient to meet this showing includes sworn affidavits from the potential witnesses stating what testimony they would have provided. *Daniels*, 2006 WL 2620143, at *10. "In the absence of the necessary factual showing, Petitioner's mere conclusory allegations are insufficient to warrant finding that trial counsel was ineffective for failing to call these witnesses to testify." *Id.* (citation omitted). Moreover, for purposes of the *Strickland* analysis, "'the absence of exculpatory witness testimony from a defense is more likely prejudicial when a conviction is based on little record evidence of guilt.'" *Brower v. Secretary for Dept. of Corr.*, 137 Fed. Appx. 260, 266,

(11th Cir. 2005) (quoting *Fortenberry v. Haley*, 297 F.3d 1213, 1228 (11th Cir. 2002)).

In the instant case, Petitioner failed to provide any evidence substantiating what testimony Tommy could or would have offered. Thus, Petitioner's conclusory allegation that Tommy would have testified that he told Petitioner to take the truck and sell the equipment in it does not support a finding of ineffective assistance of counsel.[3] Moreover, the record reflects that the jury heard testimony from Bridget Pulsifer, who saw Petitioner at the scene of the crime and identified him after he was apprehended, implicating him in the burglary. Additionally, the jury heard expert testimony that a shoe print found on a piece of cardboard near the office-area where the burglary occurred was made by the rigth shoe Petitioner was wearing when arrested. In sum, even assuming trial counsel's performance was deficient for failing to investigate and call Tommy to testify, the evidence linking Petitioner to the scene of the burglary and the offenses was overwhelming. As such, Petitioner has not established that he was prejudiced by trial counsel's performance. Thus, the state court's determination is neither contrary to nor an objectively unreasonable application of federal law.

B.  Claim Two

Petitioner asserts that trial counsel rendered ineffective assistance by failing to file a motion to suppress the "show-up" identification made by Bridget Pulsifer as it was

---

[3]The Court notes that at trial Petitioner was asked on cross-examination why Tommy had not been called to testify. Petitioner responded that Tommy and other witnesses did not want to get involved. (App. A at 297.)

unduly suggestive. Petitioner also maintains that the in-court identification was subject to suppression based on the poisonous fruit doctrine.

Petitioner raised this claim in his Rule 3.850 motion, and the state court denied relief. (App. I at 4-5.) Applying *Strickland*, the state court concluded that Petitioner failed to demonstrate that he was prejudiced by trial counsel's failure to file a motion to suppress Ms. Pulsifer's identification of Petitioner. *Id.* at 5. The state court reasoned that the totality of the circumstances established that the show-up identification was not unduly suggestive nor was there an irreparable risk of misidentification. *Id.* The state court noted that Ms. Pulsifer testified that:

> [S]he was at her business around 9 p.m. when she saw someone on the forklift whom she did not know: a dark-skinned black man, "probably middlish [sic] age," wearing a tan overcoat. She ... viewed him through [a] pane of glass, but ... he was directly underneath a bank of bright lights, so she could see him very well.

*Id.* at 4-5. The state court further noted that around 3:00 a.m. Ms. Pulsifer was contacted by law enforcement, which informed her that someone had been stopped driving the truck stolen from her business, and when Ms. Pulsifer arrived at the scene, she saw that the person detained was dressed and looked as she recalled him looking at her business. *Id.*

The United States Supreme Court has noted that "[s]uggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." *Neil v. Biggers*, 409 U.S. 188, 198 (1972). However, suggestive "show-up" identifications are admissible if, based on the totality of the

circumstances, the identification was reliable. *Id.* at 199. "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* at 199-200. "The state court's findings on each of the *Biggers* factors are entitled to a presumption of correctness, and [the Petitioner must] show[] that those findings were clearly erroneous." *Hawkins v. Sec., Florida Dept. of Corr.*, 2007 WL 669293, at *3 (11th Cir. 2007).

The record reveals that Ms. Pulsifer testified that when she identified Petitioner, he was dressed exactly how she told the police he was dressed when she saw him at the scene of the burglary and he looked exactly how she had described him. (App. A at 135.) She testified that the person she saw was either African-American or Latino because he had darker skin. *Id.* at 142. Ms. Pulsifer viewed him from a window and saw that he was wearing a tan jacket. *Id.* at 143. Thus, Ms. Pulsifer had an opportunity to view Petitioner at the time of the crime, without any distraction; she accurately described his general appearance, including his attire; and she was certain of her identification of Petitioner at the time of the show-up, approximately six hours after she saw him at her place of business. Based on the totality of circumstances as found by the state court and viewed by counsel at the time, the Court finds that there is not "a very substantial likelihood of irreparable misidentification that would have led to the exclusion of the identification

evidence." *Hawkins*, 2007 WL 669293 at *3. Thus, Petitioner has failed to establish either that counsel's performance was deficient or that he was prejudiced. Accordingly, this claim is denied pursuant to § 2254(d).

C.  **Claim Three**

Petitioner asserts that trial counsel rendered ineffective assistance by failing to hire an expert witness to challenge the shoe print evidence. Petitioner contends that the expert could have testified as to the approximate number of shoe prints and the age of the shoe print made by Petitioner's shoe on the cardboard found near the crime scene. Petitioner also alleges that an expert could have testified that the shoe print found on the front door of the office was not made by his shoe.

Petitioner raised this claim in the state court, which denied relief. (App. I at 6.) The state court noted that the State's crime laboratory analyst testified in detail about her examination of the prints found at the scene of the burglary and the shoes taken from Petitioner. *Id.* The State's expert opined that "based on the unique characteristics of the right shoe submitted for testing, it was the only shoe which could have made one of the prints on the piece of cardboard." *Id.* The state trial court further found that defense counsel thoroughly cross-examined the State's expert witness. *Id.* The state trial court concluded that "[i]t is merely speculative to assume that a defense expert would have been able to contradict the specific testimony of the State's expert, and [Petitioner's] conclusory assertion to this effect is simply insufficient to establish prejudice." *Id.*

This Court agrees with the state trial court. Petitioner's allegations are vague and conclusory and are inadequate as a matter of law to raise a cognizable claim of ineffective assistance of counsel. *See United States v. Cranshaw*, 817 F. Supp. 723, 728 (N.D. Ill. 1993), *aff'd without opinion*, 23 F.3d 410 (7th Cir. 1994), *cert. denied*, 513 U.S. 953 (1994). He must provide evidence, not mere conclusory allegations that counsel overlooked exculpatory information. *Barkauskas v. Lane*, 946 F.2d 1292, 1295 (7th Cir. 1991); *cf. Aldrich v. Wainwright*, 777 F.2d 630, 637 (11th Cir. 1985), *cert. denied*, 479 U.S. 918 (1986) (speculation insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation.) In the present case, Petitioner's bald assertions are inadequate to overcome the presumption that counsel acted reasonably. *Matura v. United States*, 875 F. Supp. 235, 237 (S.D.N.Y. 1995).

Moreover, the state trial court's finding that Petitioner's claim was insufficient to support an ineffective assistance of counsel claim is not unreasonable. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim); *e.g. Hannon v. State*, 941 So. 2d 1109, 1138 (Fla. 2006) ("The defendant bears the burden of establishing a *prima facie* case based upon a legally valid claim. Mere conclusory allegations are not sufficient to meet this burden."). Thus, this claim is denied pursuant to § 2254(d).

D.   *Claim Four*

Petitioner asserts that his conviction for felony fleeing or attempting to elude at high speed or with wanton disregard violates the Double Jeopardy Clause of the United States

11

Constitution. Prior to and during trial, defense counsel asserted that the State was precluded from prosecuting Petitioner for the offense of felony fleeing or attempting to elude at high speed or with wanton disregard as it was barred by the prohibition against double jeopardy. The trial court subsequently denied the double jeopardy objection, concluding that Petitioner had pled guilty to misdemeanor fleeing or attempting to elude Officer O'Donnell based on the initial stop, but the offense of felony fleeing or attempting to elude at a high speed or with wanton disregard was based on him subsequently fleeing Officer Mears. (App A at 238.)

The Double Jeopardy Clause of the United States Constitution "protects against multiple punishments for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 498 (1984). The Double Jeopardy Clause is "designed to ensure that the sentencing discretion of the courts is confined to the limits established by the legislature." *Id.* at 499. To determine "'whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple[,]'" the question that must be ascertained "is whether the legislature intended to authorize separate punishments for the crimes." *Fallada v. Dugger*, 819 F.2d 1564, 1572 (11th Cir. 1987) (quoting *Whalen v. United States*, 445 U.S. 684, 688-89 (1980)). Therefore, if the legislature intended to impose multiple punishments, the imposition of multiple sentences does not violate the United States Constitution. *Id.*

Florida state courts have held that "section 316.1935, Florida Statutes . . . , was intended to permit multiple prosecutions when a defendant flees or attempts to elude more than one law enforcement officer, even if all of the proscribed acts occur during a single

12

episode." *State v. Mitchell,* 719 So. 2d 1245, 1248 (1st DCA 1998). In so ruling, Florida courts have determined that the Florida legislature intended "that the commission of multiple acts of fleeing or attempting to elude a law enforcement officer be prosecuted as discrete offenses notwithstanding that all occurred during a single episode." *Id.* at 1248. In sum, the Florida legislature intended to impose multiple punishments for the offense of fleeing or attempting to elude a law enforcement officer; and the state court's determination that Petitioner's double jeopardy rights were not violated was neither contrary to nor an unreasonable application of federal law. Accordingly, this claim is denied.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED and ADJUDGED**:

1. The Petition for Writ of Habeas Corpus (Doc. No. 1, filed May 1, 2006) filed by Arthur Lee Brothers is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

**DONE AND ORDERED** at Orlando, Florida, this 18 day of April, 2007.

G. KENDALL SHARP
SENIOR UNITED STATES DISTRICT JUDGE

Copies to:
sc 4/17
Arthur Lee Brothers
Counsel of Record